IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, as subrogee of Canon U.S.A., Inc., <br><br> Plaintiff, <br><br> v. <br><br> B&H FREIGHT, INC., et al., <br><br> Defendants. | Case No. 16 C 355 |

**MEMORANDUM OPINION AND ORDER**

Acting as subrogee of Canon U.S.A., Inc. ("Canon"), Sompo Japan Insurance Company of America ("Sompo Japan") filed this action against B&H Freight, Inc. ("B&H Freight"), B&H Systems, Inc. ("B&H Systems") and Midwest Star Group, Inc. ("Midwest Star") under 49 U.S.C. § 14706,[1] part of what is commonly called the Carmack Amendment. Its Complaint Count II also invokes the supplemental jurisdiction provisions of 28 U.S.C. § 1367 to advance a state-law claim solely against B&H Freight. B&H Freight has responded with a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss Count II on the ground that it is preempted by the Carmack Amendment.

**Motion To Dismiss Standards**

Under Rule 12(b)(6) a party may move for dismissal for the "failure to state a claim upon which relief can be granted." Familiar Rule 12(b)(6) principles require the district court to accept as true all of Sompo Japan's well-pleaded factual allegations and view them in the light

---
[1] Further references to Title 49 of the United States Code will take the form "Section --," omitting the prefatory "49 U.S.C."

most favorable to it as the non-moving party (Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013)).  But "legal conclusions or conclusory allegations that merely recite a claim's elements" are not entitled to any presumption of truth (Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012)).

**Backgound**

Sompo Japan's claims stem from a shipment of 567 Canon EOS Rebel T-5 camera kits that never arrived at its destination.  In November 2014 Canon had arranged with one or both of B&H Freight and B&H Systems -- the two companies share an office -- to ship four such loads.  But the missing shipment itself was handled by Midwest Star.  Sompo Japan's two counts present alternative reasons why B&H Freight may be liable for Midwest Star's failure to deliver the camera kits.

Count I characterizes B&H Freight as a motor carrier or freight forwarder.  It alleges that Canon delivered the camera kits to B&H Freight or B&H Systems or both, and if B&H Freight was thus involved Sompo Japan alleges that it is on the hook for the loss without any defense or exception to liability under the Carmack Amendment.

On the other hand, Count II anticipates a defense that B&H Freight might raise -- and that it has in fact raised -- to Count I.  To that end Sompo Japan pleads in the alternative that if B&H Freight was instead merely a broker, then it violated its state-law duty in that capacity to place the camera kits with a carrier that was reliable and, perhaps more importantly, was insured for the full value of its cargo.

B&H Freight targets Count II (having simultaneously answered Count I).  It argues that the Carmack Amendment preempts any state-law claims that might be brought against it, even if

it is deemed (as its Count I answer asserts) to be a broker not subject to liability under that statute.

## Preemption by the Carmack Amendment

There can be no doubt that "[t]he Carmack Amendment generally preempts separate state-law causes of action that a shipper might pursue against a carrier for lost or damaged goods" (REI Transport v. C.H. Robinson Worldwide, Inc., 519 F.3d 693, 697 (7th Cir. 2008)). But while Sompo Japan is indeed pursuing a shipper's claim for lost goods, it is not clear that the Carmack Amendment also preempts suits against parties that are not carriers. On that score neither party cites a controlling appellate court case, nor has this Court discovered one.

In an effort to fill that void, B&H Freight draws attention to the fact that Count II alleges the same injury as Count I. But the question whether those counts are indeed distinct claims or merely alternate theories of recovery[2] is not a fruitful one. Certainly any claim for relief against a carrier under state law must be premised on an injury distinct and separate from the loss of goods if the claimant is to escape preemption by the Carmack Amendment (Gordon v. United Van Lines, Inc., 130 F.3d 282, 289 (7th Cir. 1997)). But Gordon does not of course stand for the proposition that thieves who waylay a truck are immune from suit (however impractical) simply because a claim against their victim for the loss of goods would have to be brought under the Carmack Amendment. So the existence of distinct injuries becomes important only if the Carmack Amendment might preempt any claims at all where it does not also impose liability.

_____

[2] For excellent discussions of the distinction between the federal law concept of a "claim for relief" and the state common law or code pleading concept of a "cause of action," with the latter including a theory of recovery as the former does not, see NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992) and Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1077-78 (7th Cir. 1992).

And there B&H Freight's argument falls apart. For although <u>Adams Express Co. v. Croninger</u>, 226 U.S. 491, 505-06 (1911) declared more than a century ago that the Carmack Amendment displaces state law by so thoroughly occupying the field that nothing remains of the states' police power on the subject, it spoke only of <u>carrier</u> liability: It defined the preempted field as "the subject of the liability of a carrier under a bill of lading which he must issue." So too did <u>N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.</u>, 89 F.3d 452, 455 (7th Cir. 1996) demarcate that field as "the liability of a common carrier to a shipper for loss of, or damage to, an interstate shipment."

To be sure, at one point in <u>Hughes v. United Van Lines, Inc.</u>, 829 F.2d 1407, 1415 (7th Cir. 1987) our Court of Appeals referred to the Carmack Amendment's scope without a limiting reference to carriers, saying it preempts "all state and common law remedies inconsistent with the Interstate Commerce Act." But its introductory analysis of that statute referred accurately to the seminal Supreme Court decision in <u>Adams Express</u> as having "addressed the preemptive scope of the Carmack Amendment relating to state regulation of <u>carrier</u> liability" (<u>id.</u> at 412, emphasis added). No selective snippet from the <u>Hughes</u> opinion can deflect that home truth.

Importantly, B&H Freight has pointed to no remedy provided by the Carmack Amendment against it as a broker that would be inconsistent with Count II -- indeed it seeks to leave Sompo Japan without any remedy at all. Needless to say, there is nothing in the part of the United States Code that governs motor carrier transportation (Part B of subtitle 4 of Title 49, hereafter simply "Part B") that even suggests that <u>brokers</u> were to be immunized from all liability whatever, whether due to negligence or (as is required by B&H Freight's interpretation) to their intentional wrongful acts, such that any state remedy at all would be inconsistent with its purposes.

It must be remembered that evidence of Congress' manifest purpose to supplant state law by occupying a field must take the form of either a pervasive scheme of federal regulation or a predominant federal interest (Frank Bros., Inc. v. Wis. Dep't of Transp., 409 F.3d 880, 886 (7th Cir. 2005)). Certainly the Carmack Amendment imposes no regulations on brokers at all (see Section 14706), and aside from some registration, confidentiality and record-keeping requirements (see Sections 13901, 14908(a)(1) and 14122) Part B prescribes how brokers must conduct their business only if arranging for the transportation of household goods (see Sections 13906(b) and 13904(a)(1)).

In a striking particular, no provision of Part B prohibits brokers from placing contracts with motor carriers that flout their own registration and insurance obligations (see Sections 13902 and 13906(a)),[3] a sure sign that there was no intention on the part of Congress to define all of a broker's obligations through that statute. And because the content of a broker's duties to its customers primarily impacts such traditional areas of state concern as contract, negligence and perhaps fiduciary responsibility, there is no dominant federal interest in regulating those duties such that the slightest mention of brokers would signal that the states were no longer suffered to intrude their law into the federal realm of carrier regulation.

## Conclusion

Because brokers are not liable under the Carmack Amendment, it does not preempt a claim for failing to perform whatever duties they might have under state law. Hence B&H

---

[3] Brokers arranging for the transportation of household goods are required to do so by the Surface Transportation Board (see 49 C.F.R. § 371.105), but the Board's obligation to regulate brokers for the protection of shippers extends only to those involved with household goods (see Section 13904(c)).

Freight's motion to dismiss Count II (Dkt. No. 49) is denied.

_____
Milton I. Shadur
Senior United States District Judge

Date:  April 8, 2016